NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STEPHEN PAUL LACY, *Appellant.*

No. 1 CA-CR 17-0067
FILED 1-15-2019

Appeal from the Superior Court in Maricopa County
No. CR2014-002527-003
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

_____

**C R U Z**, Judge:

¶1        Stephen Lacy appeals the superior court's denial of his motion for judgment of acquittal, claiming there was insufficient evidence to support the charges against him. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Police began investigating Club Lace in 2011, suspecting that the club was run as a house of prostitution. As part of the investigation, Detective Campbell went undercover as a sex worker seeking employment. During her "job interview" with Lacy, a club manager, Detective Campbell told Lacy she used to work as an escort, and the two discussed the prostitution practices of the club. A male detective, posing as a customer, got a private room with a Club Lace employee who agreed to perform sex acts for money.

¶3        As part of police surveillance of the club in 2013, police pulled over Robert McLaughlin after he drove away from Club Lace. McLaughlin was later identified as a manager of Club Lace. After obtaining a warrant, police searched his vehicle and found a trash bag containing used condoms and lubricant. When police later raided Club Lace, they discovered wrapped and unwrapped condoms. At trial, former Club Lace employees testified that the club provided them condoms to use during sex with customers. The same employees also testified that after customers with whom they had sex paid them, they would deliver the cash to either Lacy or McLaughlin, who would keep forty percent of the money on behalf of the club.

¶4        Police raided Lacy's home and discovered ledgers detailing the finances of the club and a notebook containing instructions for the club's employees. When Lacy was pulled over as part of the police investigation into Club Lace, he stated that he was a manager of Club Lace; furthermore, Lacy's name was on the lease for Club Lace.

**¶5**        Lacy, along with codefendants Adam Barfield, Cary Barfield, and McLaughlin, stood trial for activities related to running a house of prostitution. After the State presented its case, Lacy moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20 ("Rule 20"). The court denied Lacy's motion, and the jury convicted him on four counts: (1) operating or maintaining a house of prostitution; (2) money laundering in the first degree; (3) illegal control of an enterprise; and (4) conspiracy to commit illegal control of an enterprise.

**¶6**        Lacy timely appeals the court's denial of his Rule 20 motion. We have jurisdiction pursuant to Article 4, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶7**        We review *de novo* the superior court's denial of a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Rule 20 provides that the "court must enter a judgment of acquittal . . . if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a). "Substantial evidence is that which 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *State v. Hulsey*, 243 Ariz. 367, 384, ¶ 63 (2018) (quoting *State v. Hausner*, 230 Ariz. 60, 75, ¶ 50 (2012)). We consider the evidence in the light most favorable to sustaining the verdict and will set it aside only if "upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987) (citation omitted).

I.        Operating or Maintaining a House of Prostitution

**¶8**        The jury convicted Lacy of operating or maintaining a house of prostitution under A.R.S. § 13-3208(B). A house of prostitution is any building where prostitution—"engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration"—occurs. A.R.S. § 13-3211(2), (5). Section 13-3211(3) defines "operates and maintains" as "to organize, design, perpetuate or control. . . . includ[ing] providing financial support by paying utilities, rent, maintenance costs or advertising costs, supervising activities or work schedules, and directing or furthering the aims of the enterprise."

**¶9**        The State provided ample evidence to support the jury's finding that Lacy knowingly committed operating or maintaining a house of prostitution. In testifying about her undercover work and her interview

with Lacy, Detective Campbell stated that she told Lacy how she had previously worked from home as an escort using backpage.com and craigslist.com to obtain clients for prostitution. She told Lacy that she had invited clients to get naked before discussing sex acts and pricing with them and told Lacy that she would not engage in one specific sexual act. Lacy responded by telling Detective Campbell that if she did not get along with a patron, she could reintroduce the patron to the queue, where he could choose another woman. When she asked Lacy what the women did with the used condoms, he responded that "that would all be covered in due time." Detective Campbell further testified that Lacy informed her how much money she could make working at Club Lace and presented her with an employment agreement.

¶10            Police raided Lacy's home the day after Detective Campbell's job interview, and discovered a notebook in which the following was written:

> Remember you are an[] actress. Talk, get filthy, filthy. . . . It's only you and this guy that's trying to use you. Get him comfortable. . . . Act like you just want to be fucked and you care about nothing. . . . Tell him how big he is, et cetera. Please touch yourself. I love that.

¶11            Two Club Lace employees testified that they performed sex acts for money while working at Club Lace. They also testified that Club Lace provided the women condoms to use with their clients. When police raided Club Lace, they discovered wrapped and unwrapped condoms in the club. Furthermore, when Detective Petker pulled over and searched McLaughlin's vehicle after McLaughlin left Club Lace, Detective Petker discovered a trash bag containing used condoms and bottles of lubricant.

¶12            Finally, Lacy admitted he was a manager of Club Lace. This admission was corroborated by the fact that he conducted the interview of Detective Campbell when she applied to work at Club Lace; by Club Lace business ledgers discovered in Lacy's home; and by Lacy's name on the building lease.

¶13            In light of the above, substantial evidence supported the superior court's denial of Lacy's Rule 20 motion regarding the count of operating or maintaining a house of prostitution.

II.     Money Laundering in the First Degree

¶14     A person commits money laundering in the first degree if he "[k]nowingly initiates, organizes, plans, finances, directs, manages, supervises or is in the business of money laundering," A.R.S. § 13-2317(A)(1), which, as relevant here, means that one "[a]cquires or maintains an interest in, transacts, transfers, transports, receives or conceals the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense," *id.* at (B)(1). "[R]acketeering proceeds" include financial gain resulting from prostitution. A.R.S. § 13-2301(D)(4)(b)(xxiii).

¶15     The evidence of operating or maintaining a house of prostitution discussed in Section I, *supra*, also supports, in part, upholding the superior court's denial of the Rule 20 motion on the count of money laundering in the first degree.

¶16     Additionally, the State presented evidence of Lacy's financial gains as a result of that criminal activity. One of the Club Lace employees testified that Club Lace took forty percent of its employees' earnings, and that after customers paid, employees gave the money directly to either Lacy or McLaughlin. Police discovered a bank bag in Lacy's home addressed to "Club Lace attention Stephen Lacy" that contained documents reflecting "the split between the model and the house," thus corroborating the employee's testimony.

¶17     This evidence sufficiently supports the count of money laundering in the first degree. The superior court appropriately denied Lacy's Rule 20 Motion on this count.

III.    Illegal Control of an Enterprise, and Conspiracy to Commit the Same

¶18     A person commits illegal control of an enterprise if he, "through racketeering or its proceeds, acquires or maintains, by investment or otherwise, control of any enterprise." A.R.S. § 13-2312(A). A "prostitution enterprise" is "any corporation, partnership, association or other legal entity or any group of individuals associated in fact although not a legal entity engaged in providing prostitution services," A.R.S. § 13-3211(6), and one "controls" an enterprise if he possesses "sufficient means to permit substantial direction over the affairs of" the enterprise. A.R.S. § 13-2301(D)(1), (2).

¶19     The evidence of prostitution at Club Lace and Lacy's control over Club Lace—including Lacy's receipt of customer payments, his name

on the lease of the premises, and his admission that he is a manager of the club—all serve to prove that Club Lace was a "corporation, partnership, [or] association . . . engaged in providing prostitution services." A.R.S. § 13-3211(6).

¶20 Conspiracy to commit illegal control of an enterprise requires that one, "with the intent to promote or aid the commission of an offense . . . agrees with one or more persons that at least one of them . . . will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense." A.R.S. § 13-1003(A).

¶21 The evidence of conspiracy among Lacy, his codefendants, and his former employees includes the employees' admissions that they engaged in prostitution at Club Lace and delivered customer payments to Lacy and McLaughlin; the club's forty percent share, supported by the employees' testimony and financial records discovered in Lacy's home; and the club's provision of condoms to its employees, the condoms discovered during the search of the club, and the used condoms and lubricant discovered in a trash bag McLaughlin took with him from Club Lace.

¶22 On review, we hold substantial evidence warranted Lacy's convictions for illegal control of an enterprise and conspiracy to commit the same. Therefore, the superior court correctly denied Lacy's Rule 20 motions as to these two counts.

## CONCLUSION

¶23 We affirm the superior court's denial of Lacy's Rule 20 motion as to all counts.



AMY M. WOOD • Clerk of the Court
FILED: AA

6